THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAVID BARRETT YOUNG III, et al.,** v. **DANIEL BOONE AREA SCHOOL DISTRICT,** *et al*. | CIVIL ACTION No. 24-4729 |

**Henry, J.**                                                           February 25, 2026

**MEMORANDUM**

This case results from the tragic death of a nine-year-old child by his own hand. In the aftermath, his bereaved parents and their surviving child who was present at the time of the death sued the school district, the police who investigated the child's death, and the school bus company. The defendants previously moved for dismissal, which motions were granted in part and denied in part. The plaintiffs filed a newly amended complaint with relatively minor modifications. I now address the motions by the Daniel Boone Area School District ("the District") and Daniel Boone Area Intermediate Center ("the School") and the Amity Township Police Department (ATPD), which themselves contain only minor modifications to the previous versions on which I ruled.

I.  **BACKGROUND**

At this level, I accept the factual content of the complaint as true, including relevant amendments.[1] In my previous opinion on dismissals in this case, I provided a recitation of the facts in the then-operative first amended complaint. For the sake of economy and to avoid needless repetition,

---

[1] *See infra* § II. When I refer to the complaint (or "compl."), I mean the operative complaint as amended (a second time), filed at ECF 38.

1

I will assume familiarity with the facts—my own summary remains available in the previous memorandum—and instead include here only those amendments and deletions I observe in the new pleading, that now form the pleading under review.

First, the plaintiffs add three paragraphs alleging that, had the school employees accurately communicated to them information regarding the abuse, harassment, and bullying that Roman was enduring, they would have immediately placed Roman in psychiatric treatment, which would have saved his life. Compl. ¶ 31–32. They contrast this with the "concealment and false information provided" to them by school employees that "gave the Plaintiffs a false sense of security and artificially lowered the Plaintiffs' level of concern and, in turn, their actions in intervening and securing help for their son[.]" *Id.* ¶ 33.

Next, the plaintiffs add four paragraphs concerning two visits to their home. In the first, District Superintendent Tom Voelker arrived to discuss Roman's death. *Id.* ¶ 45. During that conversation, the plaintiffs allege that Voelker lied about the District's awareness of Roman's visiting his counselor the day before his death. *Id.* ¶ 46. A year and a half later, a mental health counselor named Lauren Bonis told the plaintiffs that Roman had visited a school counselor the day before his death in distress over being bullied. *Id.* ¶ 47. In a close parallel of ¶ 33, the plaintiffs again allege that, had they been aware of Roman's "expressing extreme distress due to bullying to school personnel and the guidance counselor," they would have begun immediate psychiatric treatment that would have saved his life. *Id.* ¶ 48.

The plaintiffs also allege that this allegedly critical information was hidden by the police department, *id.* ¶ 55, with the proviso that the police involvement began after Roman's death, *id.* ¶ 38.

The plaintiffs add allegations of severe emotional and psychological damages suffered by each of them, as well as regular psychotherapy for each of them. *Id.* ¶¶ 73–77.

Finally, the plaintiffs removed in its entirety Count XV (Fourth Amendment Malicious Prosecution Pursuant to 42 U.S.C. § 1983 against the police) and its underlying allegations, which had been dismissed with prejudice in my previous order.

As far as I can tell, no other substantive amendments were made to the First Amended Complaint.[2]

Two motions to dismiss were filed. The ATPD moved to dismiss again the entire complaint against them, which no longer includes Count XV. The District and the School also moved to dismiss. This motions to dismiss very closely resemble their predecessors, adding factual content similar to my own recitation above and brief notes to address my previous rulings. The plaintiffs filed briefs in response that update their citations to newly numbered paragraphs in the amended complaint but are extremely light on substantive changes. For instance, in the plaintiffs' brief in response to the ATPD motion, the substantive changes to the motion include both a block quotation of the new paragraph 55, a few sentences arguing therefrom, and then the incorporation of that paragraph as text. ECF 43 at 12.

---

[2] Minor changes to, for instance, the name of plaintiffs' counsel's firm and address, capitalizations, and grammatical improvements are of no moment to the consideration of these motions.

I regret that I did not order the parties to specifically identify the changes in their briefing and in the amended complaint itself, for the ease and benefit of both the parties and myself. Comparing the original papers with the updates to identify the very few novel allegations and arguments (and the dearth of any additional law) has been burdensome for me, and I imagine it may have been for the parties as well.

## II. LEGAL FRAMEWORK

To survive a motion to dismiss under Rule 12(b)(6), the complaint must set forth facts that raise a plausible inference that the defendant inflicted a legally cognizable harm upon the plaintiff. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quotation marks and citations omitted). The rule "does not permit dismissal of a well-pleaded complaint simply because it strikes a savvy judge that actual proof of those facts is improbable." *Id.* (quotation marks omitted).

When considering motions to dismiss an amended complaint, the Court generally focuses on the factual content in that complaint alone. *Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017) ("amended complaint supersedes the original" and "renders the original complaint of no effect" (cleaned up)). Further, although the Court retains its authority to reconsider pretrial rulings, it is "reluctant to reopen a ruling once made." 18B Charles Alan Wright, Arthur R. Miller, *Federal Practice & Procedure* § 4478–4478.1 (3d ed.); *accord Saint-Jean v. Palisades Interstate Park Comm'n*, 49 F.4th 830, 836 & n.3 (3d Cir. 2022) (citing Wright & Miller); *see also* Fed. R. Civ. P. 54(b).

## III. THE POLICE DEPARTMENT'S MOTION

This section considers only the new motion by, and the claims against, ATPD. In my previous order, I granted ATPD's motion to dismiss in full but without prejudice, permitting amendment by the plaintiff to attempt to overcome the deficiencies identified in the memorandum. ATPD argues that the only amendment in the complaint that could arguably alter the merits of its motion

4

are in paragraphs 55, in which the plaintiffs allege that ATPD's concealing of information essentially resulted in Roman's death.

### A. State-Created Danger

ATPD first moves to dismiss the count of state-created danger under 42 U.S.C. § 1983. Typically, governmental actors are not liable for injuries caused by private actors. The "Due Process Clause imposes no affirmative duty to protect a citizen who is not in state custody." *Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006). A due process violation may nevertheless occur "when state authority is affirmatively employed in a manner that injures a citizen or renders him 'more vulnerable to injury from another source than he or she would have been in the absence of state intervention.'" *Id.* (quoting *Schieber v. City of Philadelphia*, 320 F.3d 409, 416 (3d Cir. 2003)). This has come to be known as the state-created danger doctrine. To recover under this theory, the plaintiffs would need to show that:

> (1) the harm ultimately caused was foreseeable and fairly direct;
> (2) a state actor acted with a degree of culpability that shocks the conscience;
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
> (4) a state actor affirmatively used his authority in a way that created a danger to a citizen or rendered the citizen more vulnerable to danger than had the state not acted at all.

*Id*.

I previously found the complaint to have been insufficiently specific as to how or when police "harassed or followed" the Plaintiffs. The Youngs concede that they are required to plead affirmative conduct (rather than mere failures to act), but cite *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), for the proposition that "[p]laintiffs are not required to plead a state-created danger claim *with specificity* to survive a motion to dismiss under Rule 12(b)(6)." ECF 43

at 14 (emphasis mine). To clear the low bar they set for themselves, they again cite several paragraphs of their Complaint, which repeatedly recite that ATPD, *e.g.*, "affirmatively, intentionally, repeatedly, and knowingly harassed plaintiffs," ¶ 108, "affirmatively utilized its law enforcement officers to follow, stalk, and harass plaintiffs," ¶ 109, "affirmatively used its authority to lie to plaintiffs about the findings," ¶ 110, "affirmatively misused its authority to pervert the investigation," ¶ 111, and "affirmatively misused its authority to employ tactics and methods to investigate the death," ¶ 112. The latest amendment offers no more instances of specific conduct done by ATPD. Thus, although it includes the conclusion that ATPD "harassed plaintiffs," ¶ 108, it still offers no information on what constituted the alleged harassment. So too with the accused stalking and following.

"[I]n light of *Twombly*, Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief." *Phillips*, 515 F.3d 224, 231.[3] I previously found the complaint to have included an array of legal conclusions "couched as" factual allegations that insufficiently *show* the entitlement to relief through allegations of fact, just as quoted above. *Id.* Many of these rely on the use of the word "affirmatively" to bolster their conclusions or fit them more clearly into the fourth element of state-created danger. In each of the quotations above, a legal conclusion is again accompanied by that word, rather than facts "showing" the conclusion under Rule 8(a). And, despite the advantage of my previous opinion, they are unchanged and remain unsupported.

Once again, I note that it is not that there are *no* well-pleaded facts that could be relevant to the conduct of the police, but these facts allege tortious behavior by the police itself, not a state-

---

[3] In my previous memorandum, I mistakenly attributed a citation for the standards to the plaintiffs that was instead taken from a defendants' brief. (I cited it with the correct ECF number, at least.) It was of no moment to my decision, but I regret the error.

6

created danger. They fail to plausibly raise the inference that the ATPD created a cognizable harm *by a third party*, the danger thereof having been the fault of the police.

For instance, the Complaint adequately pleads that the police falsely told the Youngs that there was no evidence that Roman was bullied before his death, despite having received multiple eyewitness statements. Compl. ¶ 54. It adequately pleads that the police intended by misrepresenting their investigation to prevent the Youngs from learning damaging information about the school defendants, where Detective O'Rourke's wife worked, to try to protect her and her workplace from liability. *Id.* ¶ 53. But none of that indicates affirmative conduct that "in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *Bright*, 443 F.3d at 281. The facts alleged raise the inference that Detective O'Rourke instructed his wife Jessica O'Rourke not to speak with the Youngs. *See* Compl. ¶¶ 48–50. But the Youngs still have not explained what cognizable harm that caused, nor how it would shock the conscience—this instruction, of course, could only have come after Roman's death. *Id.* ¶ 38–39 (police involvement and Shawn O'Rourke's appointment began "[f]ollowing Roman's death").

The complaint newly attempts to provide the information that the Youngs were unable to obtain due to ATPD's allegedly telling school officials not to cooperate with their private investigation, but it still fails to show how lacking that information caused them harm.[4] As the complaint now alleges,

> The information that Plaintiffs could not obtain due to the concealment by Defendant Amity Township Police Department is the fact that their son, Roman, had met with a school counselor or personnel the day prior to Roman's death at which time Roman expressed and displayed severe signs of depression, sadness, crying, and demonstrated an acute risk of self-harm. This information was critical and

---

[4] It is easy to understand and sympathize with the desperation of bereaved parents to understand their child's recent death. I am nevertheless unaware of any right the Youngs had to speak with or get information from Ms. O'Rourke or other school officials. I raised this concern in my previous memorandum, but the Youngs have again supplied no argument or authority to address it.

7

necessary for Plaintiffs to have at their disposal in order to be able to meaningfully, thoroughly, and completely obtain adequate mental health treatment and interventions for Roman, which Plaintiffs were unable to do prior to Roman's death due to the concealment.

¶ 55. There is no allegation or realistic possibility that the police were aware of Roman's condition prior to his death, much less that they were concealing information about it. Once Roman died, there was no way for the police concealing that information to bring him back.

If the plaintiffs' theory is that the police concealment of the information about Roman after his death, and not Roman's death itself, is what caused them such severe damages, a theory that is not encompassed in the drafting of ¶ 55, they have not "show[n]" that under Rule 8. The complaint now alleges,

> 73. As a direct and proximate cause and result of the concealment, misconduct, and unlawful treatment by Defendants, including but not limited to as a result of the concealment, misconduct, and unlawful treatment by defendant Amity Township Police Department, Plaintiff, Michele Young, suffered cognizable harm in the form of severe emotional and psychological distress and damage, all of which remains on going.
>
> 74. More specifically, Plaintiff, Michele Young, only after and as a direct result of the death of her son and the concealment, misconduct, and unlawful treatment by Defendants, including but not limited to as a result of the concealment, misconduct, and unlawful treatment by defendant Amity Township Police Department, began to regularly attend psychotherapy treatment from a licensed mental health professional, and continues to attend psychotherapy treatment as a direct result of this severe emotional and psychological distress.

*See also* ¶¶ 75–77. It is *conceivable* that ATPD's alleged concealment would have caused the kinds of distress and damage alleged in these paragraphs, perhaps if lacking this information, the plaintiffs suffered dramatically worse and more complicated distress. Unimaginable as the depth of this pain is to someone who has not been forced through it, I do not find that the concealment itself plausibly contributed to these damages. And mere causation is not the standard to which this claim is held. It is the above-cited requirements of a claim for state-created danger. The complaint fails at least as to the second and fourth elements for state-created danger (conscience-shocking

8

culpability and affirmative use of authority, respectively), and it offers no indication of harm by a third party related to the danger created. Seeing no likelihood that the plaintiffs could amend to address this deficiency, I therefore dismiss Count IV with prejudice.

### B.  State Law Torts, Immunity, and Candor

ATPD argues that the state law torts are barred by Pennsylvania's Political Subdivision Tort Claims Act (PSTCA), which generally confers immunity from civil liability to local governmental agencies. I previously held that PSTCA confers immunity on ATPD from the present state law claims, and dismissed Counts VIII, X, XI, and XIII. Although I wrote in my memorandum that the dismissal was "with prejudice," I did not make that carve-out in the order.

The plaintiffs supply exactly the same argument, word for word, as last time, with the alteration only in the citations to accommodate their amendment. The failure to contend with my previous denial would itself be fatal. The failure even to mention it is troubling as well.

### C.  *Monnell* claims as to Unlawful Custom or Policy and Failure to Train

ATPD also move to dismiss Counts V and VI, which accuse the department of unlawful and deliberately indifferent customs, practices and policies and failure to properly train staff. A *Monell* claim is derivative of a constitutional claim in the sense that it cannot survive if there was no underlying constitutional violation. *See Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 (3d Cir. 2010). In the present case, because I have again dismissed the underlying claims, I also dismiss the *Monell* claims in Counts V and VI.

### D.  The Wrongful Death and Survival Acts

Finally, the Youngs sue ATPD under Pennsylvania's Wrongful Death Act, 42 Pa. C.S. § 8301, and Survival Act, *id.* § 8302. These statutes offer limited avenues for a decedent's

beneficiaries or estate to maintain an action that the decedent could otherwise have brought. They are derivative of the underlying tortious acts that cause the fatal injury, and they too cannot survive where the underlying claims fail. *Sunderland v. R.A. Barlow Homebuilders*, 791 A.2d 384, 390–91 (Pa. Super. 2002), *aff'd,* 576 Pa. 22 (2003); *Johnson v. City of Philadelphia*, 105 F. Supp. 3d 474, 483 (E.D. Pa. 2015), *aff'd,* 837 F.3d 343, 354 & n.58 (3d Cir. 2016). In the present case, because I have again dismissed the underlying claims, I also dismiss the Wrongful Death and Survival claims as to ATPD.

## IV. THE SCHOOL DEFENDANTS' MOTION

This section considers only the motion by the School and the District. Although my analysis substantially overlaps on the matters of state tort immunity, *Monell*, and wrongful death and survival, the analysis under § 1983 here is a much closer call.

### A. Amenability of the School to Suit

The School repeats its argument that that it cannot be sued because it is merely a subdivision of the School District. I previously granted the motion as to this claim without prejudice as apparently conceded. Nevertheless, the plaintiffs again include the School as a defendant, without offering any additional facts about it, then again offer no argument as to why the School should be amenable to suit.[5]

---

[5] Such an argument can certainly be imagined. Although the complaint indicates that the District "owned, operated, managed, staffed, overs[aw], supervised, controlled, and maintained responsibility for and over" the School, ¶ 7, it also alleges that the school is a "private corporation," ¶ 8, and thus perhaps there is some organizational complexity removing this from the simple "sue the district, not the school" rule I regarded as conceded in my previous order. I decline to research and argue the point on the plaintiffs' behalf, however, and I regard it again as conceded.

I would not characterize including the School as a defendant again as *defiance* of my order dismissing the School with prejudice. Yet, if it is a mere drafting error, it was preserved both in the caption, compl. 1, in the paragraph in the section introducing parties, *id.* ¶ 8, and repeatedly in allegations attaching to both the District and the School, *e.g.* ¶ 79–86 (repeating in every paragraph "Defendants, Daniel Boone Area School District *and Daniel Boone Area Intermediate Center*. . ." (emphasis added)). Were counsel to realize only upon reading the School's second motion to dismiss that the School had been mistakenly preserved, that would have been the last reasonable moment at which to humbly, explicitly concede the point. Alternatively, were he to believe the Court's previous order to have been incorrect, he might have offered argument and tried to explain why that argument was not made previously and why it should not be dismissed as forfeited. Counsel did neither.

### B. Section 1983: Special Relationships and State-Created Danger

The District moves to dismiss the count under 42 U.S.C. § 1983. As discussed above, governmental actors are typically not liable for injuries caused by private actors. *DeShaney*, 489 U.S. at 198-200. Two doctrines nevertheless provide exceptions to that rule: The "special relationship" of some plaintiffs to the state, and a "state-created danger."

As I previously ruled, neither the plaintiffs nor Roman could claim a "special relationship" existed with the District. A relationship with the government can be "special" in the sense that the government has an affirmative duty to, for instance, provide medical care and ensure a person's safety. The Youngs evidently concede this point, again offering no argument regarding special relationship in their briefing.

The focus instead is on whether the District created a danger that harmed the Youngs. Like ATPD, the District argues principally on the requirement that such a claim show an affirmative act

11

rather than merely passive inaction. *See Phillips*, 515 F.3d at 235 (emphasis original). I previously reasoned that the lion's share of actions attributable to the District in the present complaint cannot amount to affirmative actions. I concluded that the District's refusal to cooperate with the Youngs' investigation into Roman's death was similarly not an affirmative act but a passive inaction.

 I left aside one action "potentially attributable" to the District: The misinformation given by school authorities to the Youngs about Roman's episode the day before his death. The factual content pleaded here is thin, but sometime on September 7, someone at the school called Roman's mother and told her "merely that [Roman] had 'gotten sick' at lunch." Compl. ¶ 30. The caller "affirmatively misrepresented the mental state that Roman was in, and also affirmatively concealed from Roman's parents the abuse, harassment, and bullying that Roman had been enduring at school and on the bus which the defendants knew about," *id.* ¶ 30, concealing the far more extreme episode that had unfolded including "obvious signs of acute psychological distress," *id.* ¶¶ 24, 27.

 The inference that the Youngs assert is that "[h]ad these defendants not misused their authority in this manner, Roman Young would be alive today." *Id.* ¶ 71. That could be true, but there is not enough factual matter on this point to "nudge[] . . . the assertion from conceivable to plausible." *Iqbal*, 556 U.S. at 680. The question is whether something about the misrepresentation made to Roman's parents worsened the risk of Roman's death, whether it changed the status quo. As I noted previously, nothing was alleged about whether the caller indicated (through words or otherwise) that there was nothing to worry about, rather than *failing to indicate* that there were behaviors to worry about. Similarly, nothing was alleged about whether Roman's parents were otherwise aware of his being bullied or severely troubled—if, for instance, they had plans to more closely supervise Roman or get him treatment, but then canceled those plans relying on the misrepresentation. I added that "each of these could support the inference that they scaled back their

own close attention to Roman based on hearing that everything was fine at school (beyond a stomach ache)" and therefore dismissed without prejudice and permitted amendment.

With the opportunity to amend and again brief the matter, the plaintiffs have shown nothing further with which they could bolster their claim. The allegations they add regarding the District exclusively refers to meetings between the plaintiffs and District personnel after Roman's death, and it reveals nothing about facts prior to his death. *See* compl. ¶¶ 45–47. Their allegation that the District Superintendent lied to them about being "able to confirm any evidence that Roman had met with any school counselor or personnel the day prior to Roman's death at which time Roman expressed and displayed severe signs of depression . . ." might suggest a cover-up, but it is too far a stretch to speculate that there was a cover-up and that it was related to something more than *failures* by school counselors to indicate Roman's distress before his death. Nor did the plaintiffs apparently have facts to offer about the phone call that could have indicated how the phone call causally related to Roman's death.

At best, the Youngs allege that, had they been aware of the depth of Roman's distress, they would have immediately put him in life-saving psychiatric care. *Id.* ¶¶ 31–33. I do not doubt it, and I am confident all wish that had happened. The question is not of what the Youngs would have done with the information but of whether the school is liable for failing to provide it. Under the law as I read it now and have previously explained it, it is not enough to carry this claim. I therefore dismiss the state-caused danger count.

### C.  State Law Torts and Immunity

As with ATPD's motion, the District moves to dismiss the state law torts are barred by PSTCA. *See supra* § III.C.. As in my previous discussion, I already held that PSTCA does confer

immunity on the agency for the relevant state law claims, so I dismiss Counts VII, XI, XII, and XIV. *See Udujih*, 513 F. Supp. 2d at 358.[6]

### D.  *Monell* claims as to Unlawful Custom or Policy and Failure to Train

As with ATPD's motion, the District moves to dismiss the *Monell* claims, which accuse it of unlawful and deliberately indifferent customs, practices and policies and failure to properly train staff. *See supra* § III.D. Such claims are derivative in the sense that they cannot survive if there was no underlying violation. *See Heller*, 475 U.S. at 799; *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 (3d Cir. 2010). Because I dismiss the underlying claims without prejudice, I dismiss the *Monell* claims without prejudice as well.

### E.  The Wrongful Death and Survival Acts

The Youngs sue the District under Pennsylvania's Wrongful Death Act, 42 Pa. C.S. § 8301, and Survival Act, *id.* § 8302. These actions are derivative of the underlying tortious acts that cause the fatal injury, and they too cannot survive where the underlying claims fail. *See supra* § III.E. Because I dismiss the underlying claims without prejudice, I dismiss the Wrongful Death and Survival claims without prejudice as to the District.

### F.  Punitive Damages

Finally, the District moves to dismiss the Youngs' claim for punitive damages. As I grant the motion to dismiss all counts, I need not reach this issue.[7]

---

[6] Because I rule that the District is immune regarding Count XI for NIED and Count XIV for civil conspiracy, I again do not reach arguments that these claims fail on other grounds.

[7] I previously noted that I probably would grant the District's motion as to punitive damages, were the Youngs to amend and defeat dismissal. The Youngs once again offered no argument against the application of *City of Newport* and § 8553(c) as a matter of law, despite my raising them as apparently foreclosing punitive damages.

## V. <u>CONCLUSION</u>

For the reasons above, I am issuing an order that grants ATPD's, the School's, and the District's motions to dismiss as to all counts.

The Youngs request that I permit them leave to amend the complaint again. Because I have already provided such leave and now find the amendments insufficient to change the outcome, I deny leave. I do so without prejudice, on the chance that as the case proceeds, there is some information that meaningfully changes things. At the appropriate time, the Youngs could then move for leave to amend, offering a brief that carefully considers the way that whatever new allegations interact with this decision and the previous one.